**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Xcentric Ventures, LLC, | No. CV-12-00130-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Mediolex Limited., a foreign corporation d/b/a ComplaintsBoard.com; ComplaintsBoard.com, an unregistered business entity; Mark Schultz, an individual | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss of Defendants Mediolex Ltd., ComplaintsBoard.com, and Mark Schultz ("Defendants"). (Doc. 11.) For the reasons discussed below, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Xcentric Ventures, LLC ("Xcentric") is an Arizona limited liability company that owns and operates the website www.RipoffReport.com (the "Ripoff Report"). (Doc. 1 at 2.) The Ripoff Report permits consumers to post complaints about companies with whom they have had negative experiences. (Doc. 11 at 2.) Defendant Mediolex Ltd. is a foreign corporation that owns and operates ComplaintsBoard.com, a website with the same premise as the Ripoff Report. (*Id.*) Defendant Mark Schultz is a former shareholder, director, and officer of Mediolex, as well as an alleged part owner of ComplaintsBoard.com. (Doc. 11-1 at 7–8; Doc. 1 at 3.)

Xcentric owns copyrights of all the consumer complaints posted on the Ripoff Report. (Doc. 1 at 4.) In December 2008, Xcentric filed suit against the then-identified registrant of ComplaintsBoard.com, Elizabeth Arden, for systematically copying complaints from the Ripoff Report and posting them onto the ComplaintsBoard.com website. (*Id.* at 4–5.) Xcentric obtained a default judgment and permanent injunction against Elizabeth Arden on October 22, 2009. (*Id.* at 5.) Xcentric then began enforcement and collection proceedings, at which point Defendants (or at least some of them) entered into the litigation to oppose Xcentric's efforts.[1] (Doc. 16 at 2–3.)

Xcentric filed suit against the current Defendants on January 20, 2012. (Doc. 1 at 1.) Its Complaint alleges that Defendants "encourage and permit consumers to post content that has been exclusively licensed to Xcentric" and display Xcentric's trademarked phrases on their website. (*Id.* at 5–6.) Xcentric asserts claims of copyright and trademark infringement, as well as a claim of unfair competition, against Defendants. (*Id.* at 7–10.)

Defendants contend that Xcentric's Complaint should be dismissed because (1) Defendants do not have sufficient minimum contacts with the forum to justify this Court's exercise of personal jurisdiction, (2) Xcentric has failed to state a claim because Defendants are protected by the DMCA's safe harbor provisions, (3) Xcentric failed to timely serve Mediolex, (4) ComplaintsBoard.com is an improper party because it is a piece of property rather than an entity, and (5) Xcentric has failed to state a claim against Mark Schultz because he is protected by Arizona's corporate veil doctrine.

---

[1] Xcentric attaches to its Response a series of pleadings and communications from Defendants and persons affiliated with Defendants that relate to Xcentric's enforcement proceedings after the 2009 judgment. (Docs. 16-1–5.) On a motion to dismiss, however, a district court is limited in considering external documents. *U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). While matters of public record, such as prior court proceedings, are proper subjects of judicial notice, the court may take notice only of the authenticity and existence of a particular order or pleading, not the veracity or validity of its contents. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006) *aff'd in part*, 393 F. App'x 513 (9th Cir. 2010). As such, the Court will not consider the contents of these exhibits on, and finds it unnecessary to the resolution of, this motion to dismiss.

## I. Personal Jurisdiction

### A. Legal Standard

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)); *Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984), *cert. denied*, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Id.* (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,* 551 F.2d 784, 787 (9th Cir.1977)). "The mere allegations of a complaint, when contradicted by affidavits, are not enough to confer personal jurisdiction over a non-resident defendant." *Chem Lab Products, Inc. v. Stepanek*, 554 F.2d 371, 372 (9th Cir. 1977) (citing *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967)); *Data Disc*, 557 F.2d at 1284 (citing *Taylor*, 383 F.2d at 639). However, "uncontroverted allegations in [the plaintiff's] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 2003 (5th Cir. 1989)).

To establish a prima facie case for personal jurisdiction, the plaintiff has the burden of showing that: (1) the forum state's long-arm statute confers jurisdiction over the nonresident defendant; and (2) the exercise of jurisdiction comports with principles of due process. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute confers jurisdiction to the maximum extent allowed by the Due Process Clause of the United States Constitution. ARIZ. R. CIV. P. 4.2(a); *Doe v. American Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Therefore, the issue is whether the exercise of personal jurisdiction accords with due process. Due process requires a nonresident defendant to have "certain minimum contacts with [the forum]

such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) (internal citation omitted). There are two types of personal jurisdiction, general and specific. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.5 (1985).

Xcentric only argues that this Court has specific jurisdiction over Defendants; it does not claim that this Court may exercise general jurisdiction over them. (Doc. 16 at 4.) Specific jurisdiction is analyzed under a three-pronged test: "(1) [t]he non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (2012) (emphasis in original).

Here, because the underlying lawsuit sounds in copyright, a purposeful direction analysis is appropriate rather than a purposeful availment analysis. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Purposeful direction is evaluated using the Supreme Court's three-part *Calder* effects test. *Id.* Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted).

**B.    Analysis**

For the first prong of the *Calder* test, Xcentric alleges the following intentional acts by Defendants: encouraging and permitting consumers to post content that has been exclusively licensed to Xcentric and using Xcentric's trademarks on the ComplaintsBoard.com website. (Doc. 1 at 5–6.) Defendants counter that they merely

"provide information on companies throughout the world" and that this passive act is insufficient to establish purposeful direction. (Doc. 11 at 7.) In support of this assertion, Defendants attach an affidavit from Sergei Kudriavstev, an officer, director, and shareholder in Mediolex, stating that the information provided on ComplaintsBoard.com "is not specifically directed at Arizona companies." (Doc. 11-1 at 2.)

Kudriavstev's affidavit does not controvert the allegations in Xcentric's Complaint. The fact that ComplaintsBoard.com does not specifically direct information posted on its site towards companies in Arizona does not conflict with the allegation that Defendants intentionally encouraged consumers to post Xcentric's copyrighted content or that Defendants intentionally used Xcentric's trademarks. Kudriastev's statements apparently refer to the companies being reviewed on ComplaintsBoard.com, while the allegations in the Complaint go to the source of the content of those reviews. As such, Xcentric's assertion of Defendants' intentional acts stands uncontroverted, and the Court must take them as true. Thus, Xcentric has made an adequate showing of intentional acts, the first *Calder* prong.

The second *Calder* prong of express aim is satisfied when "a plaintiff alleges that the defendant individually targeted [it] by misusing [its] intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011). A claim that the defendant is accused of plagiarizing and republishing copyrighted material and that both parties are in the same "relatively specialized field," is sufficient to allege that the defendant targeted the plaintiff's business and entered into direct competition with the plaintiff. *Id.* at 1078.

Here, Xcentric has alleged that Defendants encouraged and permitted users of ComplaintsBoard.com to plagiarize and republish Xcentric's copyrighted material and trademarks. (Doc. 1 at 5.) Furthermore, as admitted by both parties, Xcentric and Defendants are both in the business of posting negative consumer reviews of businesses. (*Id.* at 3; Doc. 11 at 2.) Defendants in fact state that they are in competition with

Xcentric. (Doc. 11 at 2 (describing ComplaintsBoard.com as "a competing website" to the Ripoff Report).) As discussed above, the affidavits attached by Defendants state merely that the content of ComplaintsBoard.com does not target Arizona companies; they do not controvert Xcentric's allegations of republication and competition. Thus, the Court takes Xcentric's allegations as true, and they satisfy the second prong of express aim.

The third prong of the *Calder* effects test is also satisfied, as Xcentric alleges in the Complaint that all Defendants acted with the "knowledge that they would cause harm within the State of Arizona," and Defendants have submitted no affidavit controverting this allegation. Furthermore, "a corporation incurs economic loss, for jurisdictional purposes, in the forum of its principal place of business." *CollegeSource*, 653 F.3d at 1079. Xcentric's principle place of business is in Tempe, Arizona. (Doc. 1 at 2.) Thus, all three prongs of the *Calder* effects test are met, and Xcentric has met its burden of alleging facts that constitute purposeful direction.

Defendants do not contest that the Xcentric's claim arises out of Defendants' forum-related activities. As alleged by Xcentric, Defendants' forum-related activities are that they intentionally encouraged and permitted consumers to copy Xcentric's copyrighted reviews and that they intentionally infringed on Xcentric's trademarks. These activities are related to the forum because Xcentric is based in Arizona, and they are the very activities out of which Xcentric's claim arises. Thus, the second part of the three-pronged specific jurisdiction test has been met.

Because Xcentric has made a satisfactory showing of the first two prongs of the specific jurisdiction test, the burden now falls on Defendants to put forth a "compelling case" that this Court's exercise of personal jurisdiction would be unreasonable. *Mavrix Photo*, 647 F.3d at 1228. The reasonableness determination depends on factors such as: the extent of the defendant's purposeful interjection into the forum, the defendant's burdens from litigating in the forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in adjudicating the dispute, the most efficient forum for judicial resolution of the dispute, the plaintiff's interest in effective and

convenient relief, and the existence of an alternative forum. *Russo v. Manheim Remarketing, Inc.*, No. CV-11-393-PHX-JAT, 2012 WL 2191649 at *11 (D. Ariz. June 14, 2012) (quoting *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995)).

The first factor is the extent of purposeful interjection into the forum. As discussed above, Defendants allegedly purposefully directed their activities to Arizona. However, the extent of interjection has not been great. Xcentric apparently alleges that Defendants only remotely encouraged and permitted users to copy Xcentric's content, presumably by allowing users to place Xcentric's content on the ComplaintBoard without monitoring whether it was copyrighted. There is no allegation that Defendants themselves ever made any contact with Arizona by phone calls, letters, or physical trips. This factor, therefore, weighs in Defendants' favor.

The second factor is Defendants' burden from litigating in the forum. Defendants argue that they would be subject to a significant burden from having to litigate "on the other side of the world, in a foreign language, utilizing an unfamiliar legal system." (Doc. 11 at 8.) It indeed appears that litigating in the District of Arizona would be inconvenient for the foreign Defendants. However, the burden on Defendants is to put on a compelling case against exercising jurisdiction. Defendants have not presented any evidence or specific facts showing the extent of the burden they would suffer. Furthermore, "the advent of modern transportation . . . has made the burden of defending in a foreign forum more palatable." *Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995) (internal quotations omitted). Thus, this factor does not weigh in Defendants' favor.

The third factor is the extent of conflict with the sovereignty of Defendants' state. Defendants allege that Mediolex is incorporated in the Republic of Seychelles and that Schultz is a resident of Latvia. (Doc. 11 at 2–3.) As such, foreign sovereignty interests would be implicated by the District of Arizona's exercise of jurisdiction. This factor weighs in Defendants' favor.

The fourth factor is the forum state's interest in adjudicating the dispute. As Xcentric notes, Arizona has a "strong interest in protecting its residents from injury and

in furnishing a forum where their injuries may be remedied." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1193 (9th Cir. 2002). This factor therefore weighs in Xcentric's favor.

The fifth factor is whether the District of Arizona is the most efficient forum for resolution of these claims. Defendants appear to argue that a better forum exists "where Defendants reside," but they never state what country that is. (Doc. 11 at 8.) Previous litigation related to the facts of this lawsuit already took place in the District of Arizona. Therefore, this factor weighs in favor of Xcentric. *See Ballard*, 65 F.3d at 1502 (concluding that it would be more efficient to litigate the dispute in a forum "already . . . familiar with the facts and procedural history of the litigation.")

The sixth factor is the plaintiff's interest in efficient and convenient relief. Xcentric is located in Arizona and has already litigated a similar and related case in this district. Therefore, this factor weighs in Xcentric's favor. The final factor is the existence of an alternative forum. Defendants state that "[t]here is a perfectly acceptable legal system in place where Defendants reside." (Doc. 11 at 8.) Again, Defendants do not specify where that is, and their other allegations indicate that it could be at least two places. Defendants do not elaborate on why the system in their place of residence, wherever it may be, is preferable to the District of Arizona. Because the burden is on Defendants at this stage of the personal jurisdiction analysis, this factor weighs in Xcentric's favor.

Five of the seven factors in the reasonableness inquiry weigh against Defendants. As such, they have not met the "heavy burden of rebutting the strong presumption in favor of jurisdiction." *Ballard*, 65 F.3d at 1500. Therefore, because Xcentric has made a prima facie showing that personal jurisdiction exists over Defendants and Defendants have failed to rebut that showing, the Motion to Dismiss for lack of personal jurisdiction is denied.

## II. Failure to State a Claim

Under the Digital Millennium Copyright Act ("DMCA"), a service provider is

protected from liability for copyright infringement if it meets a number of requirements. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 667 F.3d 1022, 1030 (9th Cir. 2011). Defendants contend that Xcentric has failed to state a claim against them because they qualify for one of the DMCA's safe harbors under 17 U.S.C. § 512(c).

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a complaint does not "permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

The safe harbor provision of the DMCA states that a "service provider shall not be liable for monetary relief" if all of the following requirements are met: (1) it does not

have actual knowledge that the material on its network is infringing, (2) it is not aware of facts or circumstances that would make the infringing activity apparent, and (3) upon obtaining knowledge or awareness of such infringing activity, it acts expeditiously to remove or disable access to the copyrighted material. 17 U.S.C. § 512(c) (2010).

Defendants again argue that they cannot be held liable because the only act Xcentric has alleged is that "other people are allegedly posting [Xcentric's] material" on ComplaintsBoard.com. (Doc. 11 at 10.) However, Defendants mischaracterize the Xcentric's allegations. Xcentric did not allege that Defendants were merely passively allowing third parties to post copyrighted content on ComplaintsBoard.com. Instead, it alleged that Defendants actively "encouraged and permitted" this practice by third parties. This allegation, if taken as true, may be sufficient to preclude Defendants from taking advantage of the DMCA's safe harbor provisions. Nevertheless, Defendants are correct in stating that Xcentric has failed to state a copyright claim on which relief may be granted.

A plaintiff claiming copyright infringement must establish two elements: (1) ownership of a valid copyright, and (2) that the defendants violated the plaintiff's exclusive rights under the Copyright Act. 17 U.S.C. § 501(a) (2003); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). There are three doctrines of copyright liability: direct, contributory, and vicarious. *Ellison*, 357 F.3d at 1076. It is clear from the Complaint that Xcentric has not alleged direct copyright infringement; it does not claim that Defendants personally copied Xcentric's exclusive material, but rather that Defendants "encouraged and permitted" others to do so. Thus, Xcentric's allegation of copyright infringement must be under a theory of either contributory or vicarious infringement.

To state a claim for contributory copyright infringement, a plaintiff must show that a defendant had knowledge of the infringing activity and induced, caused, or materially contributed to the infringing conduct of another. *Id.* Vicarious liability is found where "a defendant has the right and ability to supervise the infringing activity and also has a

direct financial interest in such activities." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001).

Here, Xcentric has alleged conclusorily that Defendants "encouraged" others to copy and republish its copyrighted material. It has not alleged any facts that would lead to a reasonable inference that Defendants knew of their users' republishing Xcentric's copyrighted activity or that Defendants had induced, caused, or materially contributed to such republication. The most that Xcentric has alleged is that, after it posted a review of a fictitious company on the Ripoff Report, Defendants created a posting encouraging users to submit their own reviews of that fictitious company. (Doc. 1 at 6–7.) This action, even taken as true, does not establish that Defendants intentionally encouraged users to copy reviews from the Ripoff Report onto ComplaintsBoard.com. At most, it establishes that Defendants took cues from the Ripoff Report as to which companies it sought its users to review. This does not constitute infringement. Thus, Xcentric has failed to state a claim of contributory copyright infringement.

Nor has Xcentric pled factual content sufficient to raise a reasonable inference of vicarious copyright infringement. Xcentric, by alleging that Defendants took actions to divert traffic from the Ripoff Report to ComplaintsBoard.com, may have pled sufficient facts for an inference that Defendants had a financial interest in the alleged infringing activity. However, as stated above, Xcentric pled only that Defendants "encouraged" third-party users to infringe on Xcentric's content. This is not a fact allegation that plausibly supports the element of Defendants' "right and ability to supervise the infringing activity." *Napster*, 239 F.3d at 1022. Xcentric has thus failed to state a claim of vicarious copyright infringement.

Because Xcentric has failed to state a claim for copyright infringement, Counts 1 and 2 of the Complaint are dismissed. However, because the copyright claims could be saved by amendment, the Court will provide leave to amend to state a cognizable claim within thirty days of the date of this order. *Didyoung v. Allstate Ins. Co.*, CV-12-348-

PHX-GMS, 2012 WL 1983779 at *3 (D. Ariz. June 4, 2012) (citing *Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir. 2002)).

### III.    Lack of Timely Service

Defendants contend that Xcentric's claims against Mediolex must be dismissed because Xcentric did not timely serve it in accordance with the Federal Rules of Civil Procedure. Defendants argue that, under Rule 4(m), a defendant must be dismissed if it is not served within 120 days after the complaint is filed.

The parties do not dispute that Xcentric did not serve Mediolex until 137 days after the Complaint was filed. However, Xcentric contends that the 120-day rule does not apply to its service of process on Mediolex because Rule 4(m) does not apply to foreign companies. Rule 4(m) expressly does not apply to service in a foreign country under Rule 4(f) or 4(j)(i). Defendants counter that the exceptions are only for service on a person in a foreign country or a foreign state, subdivision, agency, or instrumentality, and that Mediolex is none of these things.

It is true that Rule 4(f) and 4(j)(i) do not, by their terms, address service on a corporation in a foreign country.  Nevertheless, the majority of courts addressing the issue have found that the 120-day rule of Rule 4(m) does not apply to service on a corporation in a foreign country. *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005); *Baja Dev. LLC v. TSD Loreto Partners*, No. CV-09-756-PHX-LOA, 2009 WL 2762050 at *1 (D. Ariz. Aug. 28, 2009); *Po-Hai Tang v. CS Clean Sys. AG*, No. 11-CV-00212 BEN RBB, 2011 WL 3235751 at *2 (S.D. Cal. July 28, 2011); *Bekaert Progressive Composites Corp. v. Wave Cyber Ltd.*, No. 06CV2440-LAB(LSP), 2007 WL 1585526 at *1 (S.D. Cal. May 31, 2007); *In re Imperial Home Decor Group, Inc.*, 294 B.R. 607, 609 (Bankr. D. Del. 2003); *Flock v. Scripto–Tokai Corp.*, No. Civ. A.H-00-3794, 2001 WL 34111630, at * 4–6 (S.D. Tex. June 25, 2001). Service on foreign corporations is addressed in Rule 4(h), which is not mentioned in Rule 4(m); however, 4(h)(2) expressly incorporates the methods of service prescribed in 4(f)—and 4(f) is one of the listed exceptions to the 120-day rule in 4(m). As such, this Court will apply the

1  Rule 4(m) exception to the 120-day rule to service on corporations in a foreign country.
2  Because Mediolex was served in a foreign country, Xcentric was not required to abide by
3  the 120-day rule. Therefore, Defendants' Motion to Dismiss on the ground that Mediolex
4  should be dismissed for failure to timely serve is denied.

**IV.     ComplaintsBoard.com's Status as Property or Entity**

Defendants argue that Xcentric has failed to state a claim against ComplaintsBoard.com because ComplaintsBoard.com is a piece of property rather than a legal entity and Xcentric has failed to properly plead *in rem* jurisdiction over the property.

Defendants argue that it is an "indisputable fact" that ComplaintsBoard.com is a piece of property rather than a business entity. Defendants cite *Kremen v. Cohen* for the holding that domain names are property. 337 F.3d 1024. *Kremen* did in fact hold that, under California law, domain names are a form of intangible personal property. *Id.* at 1030. This rule does not, however, lead to the conclusion that everything with a name ending in ".com" is a domain name and therefore a piece of property. Businesses may have the letters ".com" in their name; this designation does not reduce them to pieces of property rather than legal entities. *See*, *e.g.*, *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 434 (2d Cir. 2008); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1121 (W.D. Pa. 1997); *Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.*, No. C09-285Z, 2010 WL 2104239 (W.D. Wash. May 19, 2010).

Xcentric alleged in its Complaint that ComplaintsBoard.com is an entity of unknown origin. This is a factual allegation that a court must take as true on a 12(b)(6) motion to dismiss. Defendants' conclusory statements that ComplaintsBoard.com is a domain name rather than a legal entity raise only a question of fact that cannot be resolved at the motion to dismiss stage. As such, Defendants' Motion to Dismiss the claims against ComplaintsBoard.com is denied.

However, Defendants are correct that Xcentric has not pled the elements necessary for obtaining *in rem* jurisdiction. To the extent that it is determined that

ComplaintsBoard.com is personal property rather than a legal entity, this Court exercises no jurisdiction over it. The Court has *in personam* jurisdiction over ComplaintsBoard.com only as a legal entity.

**V.     Personal Jurisdiction over Mark Schultz**

Defendants argue that the corporate veil prevents Xcentric from stating a claim for relief against Defendant Mark Schultz, who was an officer and shareholder of Mediolex. Xcentric makes no argument in response to this assertion.

In Arizona, a corporation is treated as a separate entity, and the personal assets of a corporate officer or shareholder may not be reached to satisfy corporate liabilities. *Loiselle v. Cosas Mgmt. Group, LLC,* 224 Ariz. 207, 228 P.3d 943, 950 (Ct. App. 2010); *Honeywell, Inc. v. Arnold Const. Co., Inc.*, 134 Ariz. 153, 159, 654 P.2d 301, 307 (Ct. App. 1982). However, courts can disregard the corporate entity and pierce the corporate veil if there is sufficient evidence that: 1) the corporation is actually the alter ego of one or a few individuals and 2) observance of the corporate's separate legal status would sanction a fraud or promote injustice. *Employer's Liab. Assurance Corp. v. Lunt,* 82 Ariz. 320, 313 P.2d 393, 395 (1957).

Xcentric alleges that Mark Schultz is a "part owner" of ComplaintsBoard.com. However, it also alleges that ComplaintsBoard.com is an "unknown entity" rather than a corporation. A precondition to the operation of the corporate veil is the existence of a corporation. Defendants assert that Schultz is a shareholder in Mediolex, a corporation. This is not, however, what is alleged in Xcentric's Complaint, and a 12(b)(6) motion to dismiss turns on the allegations in the complaint.

Defendants submit an affidavit from Mark Schultz in which he states that he was formerly an officer, director, and shareholder in Mediolex. (Doc. 11-1 at 7–8.) A district court may consider affidavits attached to a motion to dismiss for personal jurisdiction. On a 12(b)(6) motion to dismiss, however, the external documents a district court may consider are limited. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Unless the court converts the 12(b)(6) motion

into a motion for summary judgment, it may only consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Ritchie*, 342 F.3d at 908. Schultz's affidavit does not fit the criteria for any of these reviewable documents. In any event, the affidavit does not refute Xcentric's allegation—Schultz does not assert that ComplaintsBoard.com is a corporation and that Schultz is a shareholder or officer of it, thus allowing him to take advantage of the corporate shield doctrine.

Therefore, Defendants cannot rely on the corporate veil doctrine as a basis for dismissing Xcentric's Complaint against Schultz. Defendants' Motion to Dismiss Xcentric's claims against Schultz is denied.

## CONCLUSION

Xcentric has sufficiently set forth facts that would allow this Court to exercise personal jurisdiction over Defendants. Defendants have neither controverted these facts by affidavit nor rebutted the presumption that the exercise of personal jurisdiction would be reasonable. As such, Defendants' Motion to Dismiss for lack of personal jurisdiction is denied. However, Xcentric has failed to state a plausible claim for copyright infringement. As such, its claims of copyright infringement are dismissed.

Because Rule 4(m)'s 120-day rule for service of process does not apply to Xcentric's service of process on Mediolex, a corporation in a foreign country, Defendants' Motion to Dismiss as to Mediolex is denied. Defendants' Motion to Dismiss as to ComplaintsBoard.com is likewise denied because Xcentric sufficiently alleged that ComplaintsBoard.com is an entity rather than a piece of property. Finally, nothing in Xcentric's allegations gives rise to the operation of the corporate veil doctrine as a defense for Mark Schultz, so the Motion to Dismiss as to Schultz is also denied.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Defendants Mediolex Ltd., ComplaintsBoard.com, and Mark Schultz (Doc. 11) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Xcentric's Counts 1 and 2 for Infringement of Copyright and Contributory Infringement of Copyright are **DISMISSED** with leave to

amend, **within thirty (30) days** of the date of this Order, to state a cognizable claim.

Dated this 24th day of October, 2012.

*A. Murray Snow*
/G. Murray Snow
United States District Judge